## TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,

### v.

### Billy O'Neil FISHER, Appellee.

### No. 05–00–01790–CV.

Court of Appeals of Texas, Dallas.

July 3, 2001.

Michelle Elise Mansell, Texas Dept. of Public Safety, Garland, Kevin Michael Givens, Cynthia Jane Gorman, Texas Dept. of Public Safety, Austin, for appellant.

Creta Lynn Carter, Carter & Associates, Kenneth D. Daniel, Sherman, for appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion By Justice O'NEILL.

Appellant the Texas Department of Public Safety (DPS) appeals a judgment reversing an administrative law judge's (ALJ) order suspending appellee Billy O'Neil Fisher's driver's license. DPS presents two issues contending the county court erred because substantial evidence supported the ALJ's reasonable suspicion and probable cause determinations. We reverse the county court's judgment and render judgment reinstating the ALJ's order.

### FACTS

On February 12, 2000, Officer Paul Middleton arrested Fisher for driving while intoxicated (DWI). Fisher refused a breath test after being warned that refusal could result in the suspension of his license for ninety days. Fisher subsequently asserted his right to a hearing before the ALJ to require DPS to prove his license should be suspended. At the hearing, DPS presented the sworn report of the arresting officer. The report shows the officer was driving 55 m.p.h. south on Central Expressway in the right-hand lane. The officer was traveling ten miles below the 65 m.p.h. speed limit. Traffic was heavy, and several cars passed the officer in the left-hand lane before Fisher pulled up beside the officer's vehicle and matched the officer's speed. Fisher "refused" to pass the officer, causing several vehicles to stack up behind him. The officer slowed to between 45 and 50 m.p.h., and Fisher finally passed the officer. After Fisher passed the officer, the officer sped up again and observed that Fisher was still traveling 55 m.p.h. in the "fast lane" and cars were still unable to pass him. The officer stopped Fisher.

The officer approached Fisher and smelled a strong odor of alcohol on his breath and noticed his eyes were bloodshot. The officer asked Fisher to step out of his vehicle and walk to the back of the vehicle. Fisher was "loose" in his actions and appeared intoxicated. Fisher admitted that he had four or five beers. The

officer administered the horizontal gaze nystagmus test (HGN), and Fisher exhibited some nystagmus. The officer also administered the walk-and-turn field sobriety test, and Fisher performed poorly on the test. Because the officer believed Fisher was intoxicated, the officer arrested him for DWI. The officer transported Fisher to the Grayson County jail where, after the officer read the statutory warnings, Fisher refused to submit to a breath test.

Fisher and his passenger, Gary Lawrence Steinbring, testified before the ALJ and presented evidence attempting to show the officer had neither reasonable suspicion to stop Fisher nor probable cause to arrest him. Fisher testified that when the officer stopped him, he had not committed any traffic offense. According to Fisher, he was driving the speed limit in the left lane when he came alongside the officer. He looked down, realized he was doing 55 m.p.h., and sped up to pass the officer. He claimed he had moved into the right-hand lane to get out of the passing lane when the officer stopped him. After the officer stopped him, he performed the walk-and-turn field sobriety test. Fisher admitted he did poorly on this test, but claimed he explained to the officer that he had "extremely" bad ankles and knees. Fisher also admitted telling the officer he had four or five beers, but claimed he told the officer he had the beers over a ten-hour period.

Steinbring testified he was a passenger in Fisher's car at the time he was stopped. Steinbring admitted that Fisher had traveled in the left-hand lane beside the officer for a couple of miles preventing other cars from passing. Steinbring, however, testified the officer stopped Fisher after Fisher passed the officer and moved into the right-hand lane.

After hearing the evidence, the ALJ concluded the officer had reasonable suspi-cion to stop Fisher and during the stop had acquired probable cause to arrest him for DWI. The ALJ further found Fisher was properly requested to submit a breath or blood specimen and refused the request. The ALJ concluded DPS was authorized to suspend Fisher's license for ninety days. Fisher appealed the ALJ's order to the county court at law. In his appeal to the county court, Fisher attacked only the ALJ's reasonable suspicion and probable cause determinations. The county court reviewed the administrative record and reversed the ALJ's order. In this appeal, DPS asserts the county court erred because the ALJ's reasonable suspicion and probable cause determinations were supported by substantial evidence.

### SUBSTANTIAL EVIDENCE

■ An ALJ's decision to suspend a person's license is subject to a substantial evidence analysis. *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex.1999); *Tex. Dep't of Pub. Safety v. Duggin*, 962 S.W.2d 76, 78 (Tex.App.—Houston [1st Dist.] 1997, no pet.); *Tex. Dep't of Pub. Safety v. Stacy*, 954 S.W.2d 80, 82 (Tex. App.—San Antonio 1997, no pet.). A court applying the substantial evidence standard of review may not substitute its judgment for that of the ALJ. *Mireles*, 9 S.W.3d at 131. The issue for the reviewing court is not whether the ALJ's decision was correct, but only whether the record demonstrates some reasonable basis for the ALJ's decision. *Id.* Courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them, even if the findings are against the preponderance of the evidence. *See id.* If the evidence is conflicting, the court must defer to the ALJ's factual findings. *See Brown v. Tex. Dep't of Ins.*, 34 S.W.3d 683, 689 (Tex.App.—Austin 2000, no pet.).

## REASONABLE SUSPICION

In the first issue, DPS asserts the officer had reasonable suspicion to stop Fisher for a traffic offense. A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that the person detained actually is, has been, or soon will be engaged in criminal activity. *See Tex. Dep't of Pub. Safety v. Chang,* 994 S.W.2d 875, 877 (Tex. App.—Austin 1999, no pet.). The burden is on the State to demonstrate the reasonableness of the stop. *See id.* If an officer has a reasonable basis for suspecting a person has committed a traffic offense, the officer may legally initiate a traffic stop. *McVickers v. State,* 874 S.W.2d 662, 664 (Tex.Crim.App.1993); *Chang,* 994 S.W.2d at 877. The State is not required to show a traffic offense was actually committed, but only that the officer reasonably believed a violation was in progress. *Valencia v. State,* 820 S.W.2d 397, 400 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd).

DPS asserts the ALJ could have properly concluded the officer reasonably believed Fisher committed a traffic offense by violating sections 545.051(b) and 545.363(a) of the transportation code. Section 545.051(b) of the transportation code requires a driver on a roadway moving slower than the normal speed of other vehicles to drive in the right-hand lane, unless the driver is passing or preparing for a left-hand turn. *See* Tex. Transp. Code Ann. § 545.051(b) (Vernon 1999). Section 545.363(a) of the transportation code provides a driver may not drive so slowly as to impede the normal and reasonable movement of traffic, except where reduced speed is necessary for safe operation or compliance with the law. *See* Tex. Transp. Code Ann. § 545.363(a) (Vernon 1999).

After reviewing the administrative record, we conclude substantial evidence supports the ALJ's reasonable suspicion determination. Specifically, the officer could have reasonably concluded that Fisher committed a traffic offense: (1) by traveling in the left lane, ten miles below the speed limit, and more slowly than the flow of traffic, and (2) by impeding the movement of traffic when he pulled alongside the officer and matched his speed. In reaching our conclusion, we reject Fisher's assertion there was no reasonable suspicion that he committed a traffic offense because he presented testimony that he was passing the officer when he was stopped. Fisher has at most shown conflicting evidence was before the ALJ. However, the only issue before the county court was whether substantial evidence supported the ALJ's findings. A county court cannot disregard an ALJ's factual determinations where there is conflicting evidence. *See Mireles,* 9 S.W.3d at 131. We conclude substantial evidence supported the ALJ's reasonable suspicion determination.

## PROBABLE CAUSE

In the second issue presented, DPS asserts substantial evidence existed to support the ALJ's finding that the officer had probable cause to arrest Fisher. Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). Probable cause deals with probabilities and requires more than mere suspicion, but far less evidence than needed to support a conviction or even than needed to support a finding by a preponderance of the evidence. *Id.*

In her order, the ALJ found, among other things, that the officer had probable cause because Fisher performed poorly on the HGN test. As an initial matter, we note that Fisher asserts we should not consider the HGN results in our review because during trial the ALJ had sustained Fisher's objection to the results because DPS did not show the officer was qualified to administer the test. Even without the HGN results, however, substantial evidence supports the ALJ's probable cause determination. Specifically, the ALJ found Fisher smelled of alcohol, admitted he had been drinking, had bloodshot eyes, and failed a field sobriety test. *See Held v. State*, 948 S.W.2d 45, 51 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd); *Espericueta v. State*, 838 S.W.2d 880, 883 (Tex.App.—Corpus Christi 1992, no pet.). We reject Fisher's assertions that his testimony before the ALJ, in which he attempted to explain the evidence from the police report, shows probable cause did not exist. We reverse the county court's judgment and render judgment reinstating the ALJ's order.